IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| JUDY ANN TICHON, ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Civil Action No. 08-17 |
| ) | Magistrate Judge Amy Reynolds Hay |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| Defendants ) | |

MEMORANDUM OPINION

HAY, Magistrate Judge

Acting pursuant to 42 U.S.C. § 405(g), Judy Tichon ("Tichon" or "the claimant") appeals from a November 17, 2007 decision of the Commissioner denying her application for disability insurance and supplemental security income benefits. Cross Motions for Summary Judgment are pending. The Motion filed by Tichon (Doc. 10) will be denied, and the Motion filed by the Commissioner (Doc. 13) will be granted.

     Procedural Background

On December 13, 2004, Tichon filed her application for disability insurance and supplemental security income benefits, alleging that she had been disabled since January 1, 2000. She described the conditions precluding her from engaging in substantial gainful activity as swelling in the legs, shortness of breath, atopic dermatitis, and a cardiovascular condition. (R. 95). Following an initial denial of benefits on February 24, 2005 (R. 43), Tichon requested a hearing.

The hearing on Tichon's application took place on April 25, 2006 before an

administrative law judge ("ALJ") in Pittsburgh, Pennsylvania. (R. 29). Tichon, who was represented by counsel, and a vocational expert offered testimony. At the time of the hearing, Tichon was a forty-eight year old married high school graduate with work history as a cashier. (R. 42). When questioned about her skin condition, Tichon testified that she has suffered from eczema since she was a child, and that this condition causes her skin to redden, itch, and blister. (R.480). If she scratches her skin, it becomes infected, sticks to her clothes, and bleeds. (R. 481). She says that when she uses a topical ointment and rests, the rash heals. No doctor has ever told her that rest is essential to the healing process. (Id.). She told the ALJ that although no doctor had ever told her this either, she "knew" that her own perspiration was the cause of the rash. (Id.). Wetting and soiling herself exacerbated the rash in certain areas. (R. 490). The claimant told the ALJ that she cannot shower because she is "allergic to water." (R. 490). Consequently, she has not showered since 1986, and has used baby wipes since that time to clean her body and wash her hair. (Id.) The record does not contain medical evidence substantiating the existence of such an allergy.

Tichon also described shortness of breath which began when she was five. (R. 486). She has difficulty sleeping because of the need to elevate her back and the need to change her diaper. (Id.). She attributed her urinary and bowel incontinence to medication, but admitted that this had never been communicated to her by a physician. (R. 487). She stated that she is able to drive and go shopping with her husband, but cannot perform any household chores. (R. 486). She is up about one hour of the day between naps. (R. 491). She testified that she could not lift a gallon of milk because of back pain, shortness of breath, and shaking. She cannot walk for more than a block or stand for more than five minutes without back pain and shaking in her legs. (R.

2

490). She is able to sit for forty minutes before perspiration and itching in her genital area causes her to have to stand and walk around. (R. 491). Last, she stated that she was under treatment for depression. (Id.).

Standard of Review

The Act limits judicial review of the Commissioner's final decision regarding benefits to whether the factual findings are supported by substantial evidence, Brown v. Brown, 845 F.2d 1211, 1213 (3d Cir. 1988), and whether the correct law was applied. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984).

The ALJ's Opinion

The ALJ arrived at his finding that Tichon was not disabled within the meaning of the Social Security Act ("the Act") by applying the sequential five step analysis articulated at 20 C.F.R. §§ 404.1520(a) and 416.9020(a).[1] The claimant bears the burden of proof at the first four steps, and the Commissioner bears the burden at the fifth. See Fargnoli v. Massanari, 247 F.3d 34, 39 (3d Cir. 2001). The ALJ resolved this matter at Step Five.

The ALJ found that Tichon had a number of severe impairments, including a history of cellulitis of the leg, atopic dermatitis, and depression. (R. 32). In this appeal, Tichon challenges

---

[1]The familiar five steps are as follows: (1) If the claimant is performing substantial gainful work, she is not disabled; (2) If the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled; (3) If the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry; (4) If the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled; (5) Even if the claimant's impairment or impairments prevent her from performing her past work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

the ALJ's findings of fact and conclusions of law only as they relate to his single sentence conclusion that her atopic dermatitis did not meet or equal the listing found at 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.05. This listing, captioned "Skin Disorders," includes "*Dermatitis* (for example . . . atopic dermatitis . . .) with extensive skin lesions that persist for at least three months despite continuing treatment . . . ." Tichon does not contend that her condition meets this listing. Instead, she alleges that the ALJ failed to consider adequately whether her condition *equals* the Section 8.05 listing. She directs the Court's attention to Section 8.00 (C)(2), which addresses flareups:

> Frequency of flareups. If you have skin lesions, but they do not meet the requirements of any of the listings in this body system, you may still have an impairment that prevents you from doing any gainful activity when we consider your condition over time, especially if your flareups result in extensive skin lesions, as defined in C1 of this section. Therefore, if you have frequent flareups, we may find that your impairment(s) is medically equal to one of these listings even though you have some periods during which your condition is in remission. We will consider how frequent and serious your flareups are, how quickly they resolve, and how you function between flareups to determine whether you have been unable to do any gainful activity for a continuous period of at least 12 months or can be expected to be unable to do any gainful activity for a continuous period of at least 12 months. We will also consider the frequency of your flareups when we determine whether you have a severe impairment and when we need to assess your residual functional capacity.

Section 8.00(C)(1) defines extensive skin lesions as follows:

> Extensive skin lesions. Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>
> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

4

b. Skin lesions on the palms of both hands that very seriously limit your
   ability to do fine and gross motor movements.

On appeal, Tichon points to her medical records, noting that her skin condition flared multiple times after her alleged date of disability. She contends that the ALJ's failure explicitly to discuss those flare ups in the context of Listing 8.05 constituted error, warranting remand. The Court disagrees.

   Analysis

The claimant's argument does not merit extended discussion. The Court of Appeals for the Third Circuit rejected a virtually similar argument in <u>Rivera v. Comm'r of Soc. Sec. Admin</u>, 164 Fed. Appx. 260, 262 (3d Cir. 2006). The Court stated that the ALJ is not required make specific factual comparisons with the criteria set out in the listings, and need not even identify the listing that he used for comparison purposes. <u>Id.</u> "The ALJ is not required to use any specific format or language in his analysis." <u>Id</u>. The Court also made clear that although conclusory statements about applicability of a listing are to be avoided, where there is "abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence," the conclusory statement is, at best, harmless error. <u>Id.</u> at 264. Such is the case here.

It was Tichon's responsibility to establish that her skin disorder equaled a listed impairment. <u>Id.</u> at 262 (<u>citing</u> <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 120 n.2 (3d Cir.2000). She did not make this showing before the ALJ, and she has not given the Court reason to believe that she could fare better on remand. This is because her argument takes account of only part of the muli-part showing required of a claimant seeking to establish equivalence under Section 8.0. Frequency of flare ups is relevant, but other factors to be

considered include the severity of the flareups, how quickly they are resolved and how the claimant functions between episodes.  Although Tichon lists the dates on which she was treated for flare ups, fairly characterizing them as frequent, the medical records reveal almost nothing about the remaining factors.

Even giving Tichon the benefit of every doubt, as the ALJ did in assessing her residual functional capacity, the medical reports included in the record do not demonstrate that her skin flare ups were debilitating.  The claimant herself testified that she has suffered from eczema since infancy, and that her condition did not interfere with her ability to work from 1989 to 2001. As the Commissioner points out in his brief, on occasions where Dr. Horvath, Tichon's dermatologist, noted a flare up, he also noted that the condition was limited (R. 172-73), had improved (R. 172), was responding to medication (R. 170, 171-72), that her whole body was "under control with meds" (R. 170), that improvement had been the same for "several months," that the "meds are still helping" (R. 171, 172), that the eczema was doing "pretty well" and she was "more comfortable now than she had been in a long time"  (Id.).

Other medical evidence in the record fails to suggest that Tichon's skin condition, alone or in combination with her other impairments, was serious enough to be disabling. The report prepared by her primary care physician, Dr. Johnson, in March 2005, underscores this conclusion because he does not include the claimant's skin disorder in the impairments contributing to her inability to work. Dr. Johnson wrote:

> [Tichon] has multiple complaints. She has probable
> coronary artery disease, but, until this time has
> refused to have a Cardiac Catheterization. She also
> gets short of breath on exertion. She is also
> complaining of low back pain which limits her

6

> ability to walk and sit for extended periods of time.
> Standing is also difficult. She also has some
> urinary incontinence. She also gets episodes of
> dizziness and syncope when she stands for a long
> time. She also gets severe headaches and vomiting.
> All of *these* problems together make it very difficult
> for her to sustain employment.

(R. 200) (emphasis added). He added, almost parenthetically, that "[s]he also has a rash over her entire body for which she sees a dermatologist. So far this has not been resolved." Id. He then concluded that [Tichon] is *probably* disabled. (Id.) (emphasis added).

The ALJ termed this report "somewhat equivocal," and apparently "based upon an acceptance of Ms. Tichon's subjective complaints and self reported history." (R.33). He then summarized the objective medical evidence in the records submitted by Dr. Johnson, concluding that "the treatment notes do not reflect objective evidence of any impairment which would preclude a range of sedentary work . . . ." The ALJ also summarized the findings of the State Agency physician, Alfred Mancini, M.D., who concluded that "the documentary record was consistent with the conclusion that Ms. Tichon could perform a full range of even light work." (Id.). The results of a post-hearing consultative examination conducted by Dr. Antonio Riccelli - including his essentially negative clinical findings regarding Tichon's ability to lift, carry, stand, walk, see, feel, handle, reach, push, and pull - were also thoroughly reviewed. (R. 34).

The Court is fully satisfied that the ALJ's analysis of the record and discussion of the medical evidence demonstrate that substantial evidence supported his conclusion that Tichon's skin disorder did not meet or equal the applicable listing.

Conclusion

For the reasons detailed above, the Motion for Summary Judgment filed by the

Commissioner (Doc.15) will be granted, and the Motion for Summary Judgment filed by Judy Tichon (Doc.10) will be denied. An appropriate Order follows.

/s/ <i>Amy Reynolds Hay</i><br>
United States Magistrate Judge

Dated: 29 April, 2009

cc: Counsel of Record via CM/ECF